AMERICAN HOSPITAL ASSOCIATION, a private, non-profit corporation, West Virginia Hospital Association, a private, non-profit corporation, Stonewall Jackson Memorial Hospital Company, a private, non-profit, charitable corporation, Charles Town General Hospital, a private, non-profit, charitable corporation, Sistersville General Hospital, a city hospital, Wheeling Hospital, Inc., a private, non-profit, charitable corporation, and The Catholic Health Association of the United States, a private, non-profit corporation, Plaintiffs,

v.

L. Clark HANSBARGER, Director of the West Virginia Department of Health, Defendant.

Civ. A. No. 84–0144–C(K).

United States District Court,
N.D. West Virginia,
Clarksburg Division.

Sept. 20, 1984.

George G. Guthrie, Charles L. Woody, Robert J. O'Neil, Spilman, Thomas, Battle & Klostermeyer, Charleston, W.Va., Seymour J. Schafer, Markel, Schafer & Means, P.A., Pittsburgh, Pa., William J. Yaeger, Herndon, Morton, Herndon & Yaeger, Wheeling, W.Va., Donna D. Fraiche, Wyllie, Fraiche & Sullivan, A Professional Corp., New Orleans, La., Richard L. Epstein, Robert W. McCann, Linda A. Tomaselli, Chicago, Ill., for plaintiffs.

Chauncey H. Browning, Jr., Atty. Gen., Charleston, W.Va., for defendant.

## MEMORANDUM OPINION

KIDD, District Judge.

### Findings of Fact

1. Jurisdiction of this Court is predicated upon 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 that W.Va.Code § 16–5B–6a is unconstitutional and is an interference with collective bargaining rights between plaintiffs and their employees, which is an area pre-empted by federal labor law.

2. Plaintiff American Hospital Association is a private, non-profit corporation organized and existing under the laws of the State of Illinois, having and maintaining its principal office and place of business in Chicago, Illinois, and having as members thereof individual non-profit and local governmental hospitals located throughout West Virginia including plaintiffs Stonewall Jackson Memorial Hospital Company, Charles Town General Hospital, Weirton Medical Center, Inc., Sistersville General Hospital, and Wheeling Hospital, Inc.

3. Plaintiff West Virginia Hospital Association is a private, non-profit corporation organized and existing under the laws of the State of West Virginia, having and maintaining its principal office and place of business in Charleston, West Virginia, and having as members thereof individual non-profit and local governmental hospitals located throughout West Virginia including plaintiffs Stonewall Jackson Memorial Hospital Company, Charles Town General Hospital, Weirton Medical Center, Inc., Sistersville General Hospital and Wheeling Hospital, Inc.

4. Plaintiff Stonewall Jackson Memorial Hospital Company is a private, non-profit, charitable corporation organized and existing under the laws of the State of West Virginia, having and maintaining its principal office and place of business at Weston, West Virginia, and owns and operates a seventy (70) bed hospital located in Weston, West Virginia.

5. Plaintiff Charles Town General Hospital is a private, non-profit, charitable corporation organized and existing under the laws of the State of West Virginia, having and maintaining its principal office and place of business at Ranson, West Virginia, and owns and operates a one hundred fourteen (114) bed hospital, known as Jefferson Memorial Hospital, located in Ranson, West Virginia.

6. Plaintiff Weirton Medical Center, Inc. is a private, non-profit, charitable corporation organized and existing under the laws of the State of West Virginia, having and maintaining its principal office and place of business at Weirton, West Virginia, and owns and operates a two hundred sixty-five (265) bed hospital located in Weirton, West Virginia.

7. Plaintiff Sistersville General Hospital is a local governmental hospital organized and existing under the laws of the State of West Virginia and the ordinances of the City of Sistersville, having and maintaining its principal office and place of business at Sistersville, West Virginia, and owns and operates a thirty-two (32) bed hospital located in Sistersville, West Virginia.

8. Plaintiff Wheeling Hospital, Inc. is a private, non-profit, charitable corporation organized and existing under the laws of the State of West Virginia, having and maintaining its principal office and place of business at Wheeling, West Virginia, and owns and operates a two hundred seventy-six (276) bed hospital located in Wheeling, West Virginia.

9. Plaintiff The Catholic Health Association of the United States is a private, non-profit corporation organized and existing under the laws of the State of Missouri, having and maintaining its principal office and place of business in St. Louis, Missouri, and having as members thereof religious institutes, more commonly referred to as religious orders of nuns, which own, operate and sponsor certain non-profit hospitals located throughout West Virginia and which appoint the respective directors of said hospitals.

10. Defendant L. Clark Hansbarger is the Director of the West Virginia Department of Health and in such capacity is one of the individuals who may enforce the provisions of W.Va.Code § 16–5B–6a.

11. Code 16–5B–6a is enforceable by injunction obtained in an action at law authorized by Code 16–5B–6a(d).

12. During its 1983 regular session the West Virginia Legislature enacted Section 6a of Article 5B of Chapter 16 of the Code of West Virginia of 1931, as amended, and provided it was to be effective as of July 1, 1984.

13. During the 1984 regular session of the West Virginia Legislature, separate bills were introduced in the House of Delegates (H.B. 1805) and the Senate (Senate Bill No. 556) to repeal Section 6a of Article 5B in its entirety, which bills were unsuccessful, thereby leaving intact its effective date of July 1, 1984.

14. W.Va.Code § 16–5B–6a requires that on or before July 1, 1984, at least forty percent (40%) of the board of directors of all non-profit and local governmental hospitals located in West Virginia must be composed of an equal proportion of "consumer representatives" from "[s]mall businesses, organized labor, elderly persons, and persons whose income is less than the national median income" and that "[s]pecial consideration shall be made to select women, racial minorities and handicapped persons" for such positions and authorizes defendant Hansbarger and private citizens to enforce its provisions. The entire text of W.Va.Code § 16–5B–6a is as follows:

(a) The legislature declares that a crisis in health care costs exists, and that one important approach to deal with this crisis is to have widespread citizen participation in hospital decision-making, and that many hospitals in West Virginia exclude from their boards important categories of consumers, including small businesses, organized labor, elderly persons and lower-income consumers. The legislature further declares that non-profit hospitals receive such major revenue from public sources and are so crucial in health planning and development that it is necessary to require consumer representatives on their boards of directors. Therefore, the legislature determines that non-profit hospitals and hospitals owned by local governments should have boards of directors representative of the communities they serve.

(b) As used in this section, "applicable hospitals" means all non-profit hospitals and all hospitals owned by a county, city or other political subdivision of the State of West Virginia.

(c) At least 40 percent of the boards of directors of applicable hospitals shall, on or before the first day of July, 1984, be composed of an equal proportion of consumer representatives from each of the following four categories: Small businesses, organized labor, elderly persons and persons whose income is less than the national median income. Special consideration shall be made to select women, racial minorities and handicapped persons.

(d) The provisions of this section may be enforced by the director of health, or by any citizen of the county wherein any offending hospital is located, by the filing of an action at law in the circuit court of such county.

15. W.Va.Code 16–5B–6a(d) provides:

The provisions of this section may be enforced by the director of health, or by any citizen of the county wherein any offending hospital is located, by the filing of an action at law in the circuit court of such county.

The Court finds that the Legislature's intent was to give the Director of Health or any citizen of such county the authority to seek injunctive relief against any offending hospital for violation of this section.

16. The Court finds that there is no conflict between W.Va.Code § 16–5B–6a(d), and W.Va.Code § 16–5B–11, and W.Va. Code § 16–5B–6(1). W.Va.Code § 16–5B–11 provides that any person, association, corporation or local governmental agency violating W.Va.Code § 16–5B–6a shall be fined up to five hundred dollars ($500) or imprisoned for up to ninety (90) days or both. W.Va.Code § 16–5B–6(1) authorizes defendant Hansbarger in his capacity as Director of the West Virginia Department of Health to suspend or revoke the license of a non-profit or local governmental hospital for violation of W.Va.Code § 16–5B–6a.

17. No administrative rules and regulations have been promulgated to implement, administer, or interpret W.Va.Code § 16–5B–6a.

18. Plaintiffs Stonewall Jackson Memorial Hospital Company, Charles Town Gen-

eral Hospital, Weirton Medical Center, Inc., Sistersville General Hospital, and Wheeling Hospital, Inc., are subject to the provisions of W.Va.Code §§ 16–5B–6a, 16–5B–11, and 16–5B–6(1) by virtue of being non-profit hospitals located in West Virginia.

19. Certain members of plaintiffs American Hospital Association and West Virginia Hospital Association are subject to the provisions of W.Va.Code §§ 16–5B–6a, 16–5B–11, and 16–5B–6(1) by virtue of being non-profit or local governmental hospitals located in West Virginia.

20. Certain members of plaintiff The Catholic Health Association of the United States are subject to the provisions of W.Va.Code §§ 16–5B–6a, 16–5B–11, and 16–5B–6(1) by virtue of being religious orders which own, operate, and sponsor non-profit hospitals located in West Virginia.

21. Certain members of plaintiff West Virginia Hospital association are subject to the provisions of W.Va.Code §§ 16–5B–6a, 16–5B–11, and 16–5B–6(1) by virtue of being non-profit and local governmental hospitals located in West Virginia.

22. The Court finds the following witnesses qualified as experts: Richard P. Moses (an expert on the roles and qualifications for directors on a board of directors); University of Virginia Professor Stanley D. Henderson (expert on federal labor law); G. Roger King (expert on labor relations in the health care field); Sister Mary Roch Rocklage (expert on the religious mission of a Roman Catholic religious order which owns and sponsors a hospital); Sister Margaret Mary Modde (expert on the Code of Canon Law of Roman Catholic Church); Paul E. Mullen (expert on hospital accreditation and federal Medicare programs); and Deborah S. Kolb (expert on health care planning and finance).

23. The Court finds from the testimony of Sister Diane Bushee, Major Superior of North America and Provincial Superior for the Sisters of the Pallottine Missionary Society, that the religious order owns St. Joseph's Hospital of Buckhannon; that the present bylaws of the Sisters of the Pallottine Missionary Society, a West Virginia non-profit corporation, require that 70% of the board of directors, called the Provincial Council, be composed of members of the religious society; that the religious mission of St. Joseph's Hospital of Buckhannon, like the Sisters of the Pallottine Missionary Society, is to render care to the sick and poor in accordance with the examples set by Jesus Christ and St. Vincent Pallotti and the tenets of the Roman Catholic Church. St. Joseph's Hospital of Buckhannon is not a corporation separate from the Sisters of the Pallottine Missionary Society, but rather is the property of the Sisters of the Pallottine Missionary Society. St. Joseph's Hospital of Buckhannon nonetheless has its own "board of directors." The Provincial Council of the Sisters of the Pallottine Missionary Society appoints all of the members of such board of directors, and has the power to approve or disapprove the major actions of such board of directors. In order to ensure that St. Joseph's Hospital of Buckhannon remains devoted to its religious mission, the Provincial Council appoints to the board of directors of St. Joseph's Hospital of Buckhannon only persons who are devoted to such mission. The current bylaws of such board of directors specifically require that at least seventy percent (70%) of such board of directors must be members of the Sisters of the Pallottine Missionary Society.

The Court finds the Sisters of the Pallottine Missionary Society have a contingency plan to place representatives of special interest groups—"consumer representatives from … small businesses, organized labor, elderly persons, and persons whose income is less than the national median income"— on the board of directors of St. Joseph's Hospital of Buckhannon; that presently all members of the board of directors of the Sisters of the Pallottine Missionary are members of the religious order; that St. Joseph's Hospital of Buckhannon is a division of the religious order; that seven members of the religious community, which serve on the board of directors for St. Joseph's Hospital of Buckhannon and the Sisters of the Pallottine Missionary Society,

have income below any definition of national median income; that the purpose of the Sisters of the Pallottine Missionary Society is to render care to the sick and poor in accordance with the example set by Jesus Christ and the tenets of the Roman Catholic Church.

24. Each of the witnesses presented by the plaintiffs, with the single exception of Professor Stanley Henderson, was directly interested in the outcome of this litigation, as they were either officials or members of plaintiff organizations (Tr. 35–36, Moses) (Tr. 202, Rocklage) (Tr. 231, Bushee) (Tr. 258–259, Mode) (Tr. 264, Carter) (Tr. 285, Mullen) or had strong pecuniary ties to the plaintiffs. (Tr. 135–136, King; Tr. 308, Kolb.)

25. The testimony of Professor Stanley D. Henderson and Roger King, Esquire, was essentially legal argument and was entitled to little, if any, probative weight on the ultimate issue of the legality of W.Va. Code 16–5B–6a under federal labor laws.

26. Code 16–5B–6a had been enacted for one year and one-half before plaintiffs attempted to challenge the law. At no time had any of the plaintiffs sought clarifications from the Department of Health regarding the meaning or effect of this legislation. (*See, e.g.,* Tr. 275–276.) "If the plaintiffs were indeed as concerned with the effects arising from the implementation as they allege, they certainly would have come before this Court at an earlier period." Memorandum Opinion and Order, p. 5. Plaintiffs have failed to show irreparable injury from the operation of Code 16–5B–6a.

### Conclusions of Law

This is a case of first impression since no other state has passed a statute similar to West Virginia Code 16–5B–6a. There is no case law to guide the Court with respect to the identical issues raised by the plaintiffs.

The settled principles which govern consideration on whether a preliminary injunction should issue, pursuant to Rule 65(a) in this circuit have been enumerated in *Blackwelder Furniture Company of States-ville, Inc. v. Seilig Manufacturing Company, Inc.,* 550 F.2d 189 (4th Cir.1977). In *Blackwelder* the court held that the court must "balance the likelihood of irreparable harm to the plaintiff against the likelihood of harm to the defendant."

The two more important factors are those of probable irreparable injury to plaintiff without a decree and of likely harm to the defendant with a decree. If that balance is struck in favor of plaintiff, it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success. Always, of course, the public interest should be considered.

*Blackwelder v. Seilig, supra.*

■ The Court in determining whether to issue a preliminary injunction must balance the likelihood of irreparable harm to the plaintiff against the likelihood of harm to the defendant. *Blackwelder v. Seilig, supra.* In this instance plaintiffs allege that they will be irreparably injured unless the Director of Health is restrained from enforcing this statute. Plaintiffs argue that criminal charges could be brought against them pursuant to W.Va.Code § 16–5B–11, and that they could also have their license to operate a hospital suspended pursuant to W.Va.Code § 16–5B–11. However, testimony by plaintiffs' witnesses contradicts this assertion. *See e.g.,* Tr. 251–252. Indeed, testimony revealed that certain of the plaintiffs have a contingency plan to implement the requirements of this statute. Evidence reveals that the Department of Health has not disapproved any proposed board nor taken any administrative, civil, or criminal action against anyone. W.Va.Code § 16–5B–6a was passed during the 1983 regular session of the West Virginia Legislature and became effective as of July 1, 1984. During the one year period between passage of this legislation and its effective date the plaintiffs did not attempt to challenge its constitutionality. The State of West Virginia has an interest in seeing that its laws are implemented without interruption. If this Court were to grant the requested relief, the

State would be harmed in that it would prevent the orderly implementation of this statute. Further, there has been no showing by the plaintiffs that harm would result from representatives of the community serving on hospital boards. Indeed, no showing has been made that such individuals are less capable of managing the affairs of hospitals.

The Court is of the opinion that the plaintiffs have failed to show that any irreparable harm would result from implementation of W.Va.Code § 16–5B–6a.

The plaintiffs argue that the statute as presently written is vague and they are not certain how to comply with the law. In fact, Mr. Bruce Carter did not seem to have a problem defining small business (Tr. 278) nor did Sister Mary Diane Bushee have difficulty defining those individuals below the median income, organized labor, and elderly (Tr. 243). Sister Mary Diane testified that the Sisters of Pallottine had developed a contingency plan to comply with the law and that she believed that the plan would meet the requirements of the statute (Tr. 254). The Court is of the opinion that the plaintiffs have failed to raise serious questions of law regarding the Constitutionality of W.Va.Code § 16–5B–6a.

For reasons stated herein the Court hereby DENIES plaintiffs' motion for a preliminary injunction. It is so ORDERED.

Judgment shall be rendered accordingly.

The Clerk is directed to transmit certified copies of this Memorandum Opinion to counsel of record herein.